# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL WHITEHEAD,<br><br>Plaintiff,<br><br>v.<br><br>GERALD ROZUM, *et al.*,<br><br>Defendants. | Civil Action No. 09-220J<br>District Judge Kim R. Gibson<br>Magistrate Judge Cynthia Reed Eddy |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF. No. 106) be granted.

### II. REPORT

Plaintiff, Carl Whitehead, an inmate currently confined at the Green Rock Correctional Center, located in Chatham, Virginia, commenced this action against various individuals employed at the State Correctional Institution at Somerset, Pennsylvania. In his original complaint, Plaintiff claimed that he was wrongfully removed from his prison job, he was pressured/threatened to stop pursuing the issue of why he was removed from his position, he was given several false misconducts and was not permitted to call witnesses during the misconduct hearings, some of his property was damaged, destroyed, or confiscated, unidentified individuals used excessive force against him while Defendant Hayward was present and nurse Kline was deliberately indifferent to his serious medical needs after the alleged assault.

On December 23, 2009, the served Defendants filed a Motion to Dismiss and Brief in Support thereof. On August 31, 2010, then Magistrate Judge Cathy Bissoon issued a Report and

Recommendation (R&R) recommending that Defendants' Motion be granted in part and denied in part. The R&R recommended that all claims except for the retaliation claim against Barbarich and Pecze and the failure to intervene claim against Hayward be dismissed. The R&R also gave Plaintiff leave to amend his complaint to attempt to adequately state a retaliation claim concerning the loss of his prison job and an access to courts claim. On October 22, 2010, the District Court issued a Memorandum Order adopting the R&R and allowing Plaintiff leave to amend to aver liability with respect to the alleged involvement of Defendants Rozum, Gibson, Glass, and Gehlman in the alleged assault on Plaintiff (ECF No. 64, p. 2).

On December 20, 2010, Plaintiff filed an Amended Complaint (ECF No. 79). In his Amended Complaint Plaintiff restates many of the same claims that were dismissed in the Court's earlier Memorandum (ECF No. 64). On May 4, 2011, the served Defendants filed a Partial Motion to Dismiss (ECF No. 106). In their Motion, Defendants move to dismiss all of the claims in Plaintiff's Amended Complaint except for the failure to intervene claim against Hayward and the retaliation claim against Pecze and Barbarich. Thus, the Court must determine what claims Plaintiff is entitled to raise in his Amended Complaint in light of the issues that previously have been decided by the Court.

In this regard, "the law of the case doctrine expresses the practice of courts generally to refuse to reopen what has been decided." Williams v. Runyan, 130 F.3d 568, 573 (3d Cir. 1997 (quoting Messenger v. Anderson, 225 U.S. 436, 444 (1912)).

> The doctrine of the law of the case . . . is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing legal precept in later stages. The [Supreme] Court has defined the law of the case as a precept that posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.

In re Continental Airlines, Inc., 279 F.3d 226, 232-33 (3d Cir. 2002) (internal citations omitted).

The doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (internal quotation omitted). Although the doctrine does not limit a court's power to reconsider its own decisions, a court typically will not revisit its earlier holding unless a movant demonstrates one of the following circumstances: 1) an intervening change of law; 2) the availability of new evidence; or 3) the need to correct a clear error or prevent manifest injustice. 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478, at 790 (1981).

Plaintiff has not demonstrated any circumstance that would justify reconsideration of the Court's prior rulings. Similarly, Plaintiff has not demonstrated that this Court should disregard the law of the case on the basis of the need to correct a clear error or prevent manifest injustice. Accordingly, in light of the Court's previous rulings, the only claims Plaintiff may raise in his Amended Complaint are the following: 1) First Amendment retaliation claim concerning the loss of Plaintiff's job; 2) First Amendment retaliation claim against Defendants Barbarich and Peeze for allegedly filing false misconduct reports; 3) First Amendment access to court claim; and 4) Eighth Amendment failure to intervene claim against Defendants Hayward, Rozum, Gibson, Griffin and Gehlman.

Defendants are not moving to dismiss the failure to intervene claim against Hayward and the retaliation claim against Pecze and Barbarich. Thus, the only claims relevant to the pending motion are: 1) the First Amendment retaliation claim concerning the loss of Plaintiff's job; 2) the First Amendment access to court claim; and 3) the Eighth Amendment failure to intervene

claim against Defendants Rozum, Gibson, Griffin and Gehlman. The Court will proceed to review these claims.

A. Standard of Review

Presently pending is Defendants' Partial Motion to Dismiss the Amended Complaint (ECF No. 106). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97, 99 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). Factual allegations must be enough to raise a right to relief above the speculative level. Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein). In other words, at the motion to dismiss stage, a plaintiff is required to make a showing rather than a blanket assertion

of an entitlement to relief. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).. "This does not impose a probability requirement at the pleading stage, but instead, simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. At 232.

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff=s claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

*Pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

B. Relevant Allegations

With respect to the remaining claims, Plaintiff alleges the following in his Amended Complaint (ECF No. 79). On February 12, 2008, he was assigned to the Food Service Department at SCI-Somerset as a bake shop employee (¶ 35). On February 13, 2008, Plaintiff was ordered to report to work early (¶ 36). Upon arriving at the Food Service Department, he was told that he was not allowed inside and that Defendant Fisher wished to speak with him.

Fisher told Plaintiff that he received a staff report stating that Plaintiff was staring at the female staff and asking them personal questions. On February 13, 2008, Plaintiff sent Defendants Fisher and Hillagross a request slip to secure a copy of the report. Fisher refused to give Plaintiff a copy of the staff report or disclose the name of the staff member who wrote it. He told Plaintiff to write to Heidi Sroka in order to obtain a copy of the report (¶ 38).

Plaintiff filed a grievance regarding the loss of his job sometime in February after receiving Defendant Fisher's response to his request (¶ 39). On February 27, 2008, Defendant Hunter and Frazier conspired with Fisher to remove Plaintiff from his job due to the alleged staff report (¶ 41). On February 25, 2008, the Corrections Classification and Programs Manager (CCPM) approved Plaintiff's removal from the Food Service Department. On March 15, 2008, Defendant Griffin told Plaintiff that he would never work around any female staff as long as he was incarcerated in Pennsylvania and that he would never see the staff member report (¶ 45).

Next, Plaintiff alleges that on March 18, 2009, John Doe entered his cell DB41 and ordered him to stoop on the top bunk while Plaintiff's cellmate was strip searched (¶ 58). Plaintiff then was strip searched, handcuffed behind his back and ordered to place his forehead on the door of cell BA40. When Plaintiff refused, John Doe rammed his head into the door while another John Doe grabbed Plaintiff's left wrist and thumb digging his handcuffs into his wrist. A second John Doe grabbed Plaintiff's boxer shorts up his buttocks exposing Plaintiff. Another John Doe forced Plaintiff's head toward the door and they began dragging him down the tier and down the steps past where he believes Defendants Rozum, Gibson, Glass and Gehlman were standing. While he was being taken to the Restricted Housing Unit (RHU) by Defendant Hayward , Plaintiff claims that the John Does continued to tighten his handcuffs despite his claim that he was not resisting.

Next, Plaintiff claims that on May 2, 2009, the United States Court of Appeals for the Third Circuit denied his Petition for En Banc Rehearing (¶ 105). He states that the theft of his legal documents denied him the means to successfully argue his Petition.

C. <u>Liability under 42 U.S.C. § 1983</u>

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>West v. Atkins</u>, 487 U.S. 42 (1988); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986).

The only claims relevant to the pending motion are the First Amendment retaliation claim concerning the loss of Plaintiff's job, the First Amendment access to court claim; and the Eighth Amendment failure to intervene claim against Defendants Rozum, Gibson, Glass and Gehlman. The Court will review these claims below.

1. <u>Retaliation</u>

The first claim to address is Plaintiff's retaliation claim concerning the loss of his prison job. It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under section 1983. <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001); <u>White v. Napoleon</u>, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: 1) the conduct which led to the alleged retaliation was constitutionally protected; 2) that he was subjected to adverse actions by a state actor (here, the

prison officials); and 3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

With respect to the first factor, it is well settled that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. Rauser, 241 F.3d at 333. Rather, the first requirement a Plaintiff must show is that the conduct which led to the alleged retaliation was constitutionally protected. *Id*.

The second element requires a prisoner to show that he suffered some "adverse action" at the hands of the prison officials. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah, 229 F.3d at 225. Adverse actions that are sufficient to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser, 241 F.3d at 333, and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third factor requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. This may be established by evidence of a temporal proximity between the prisoner's protected activity and the defendant's adverse action; however, the timing of the alleged retaliatory action must be suggestive of retaliatory motive. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996). It is Plaintiff's burden to prove that the

Defendants were motivated by retaliation. Hannon v. Speck, Civil No. 87-3210, 1988 WL 131367, at *4 (E. D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor ... was as he alleged.") (internal quotes and citation omitted), *aff'd*, 888 F.2d 1380 (3d Cir. 1989) (Table).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

In establishing the elements of a retaliation claim, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (internal citations omitted). Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

The first element Plaintiff must prove is that the conduct which led to the alleged retaliation was constitutionally protected. Plaintiff's allegations regarding the loss of his prison

job fail to make any assertion that he was engaged in protected activity when he was told he was not allowed in the food service department on February 13, 2008 due to a staff member report. While a prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim, Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981), Plaintiff does no allege that he filed any grievance until after he was told he was being let go. Thus, Plaintiff has not even alleged the first prong of a retaliation claim with regard to the loss of his prison job. Thus, Defendants' Partial Motion to Dismiss this claim should be granted.

2.  Access to Courts

Plaintiff was given the opportunity to amend his complaint to assert an access to court claim. The right of access to the courts is guaranteed by the First Amendment of the United States Constitution. In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828.

However, in Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court effectively repudiated much of its prior holding in Bounds. In Lewis, the Supreme Court held that Bounds did not recognize an independent right in prisoners to have an adequate law library; instead, it concerned the established right of access to the courts. Lewis, 518 U.S. at 351. Thus, the Lewis Court held that, in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library provided was inadequate or he was denied access either to the law library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm.

> Because Bounds did not create an abstract freestanding right to a law library or legal assistance, an inmate cannot establish relevant

10

> actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary [which claim would be rejected due to such healthy inmate lacking an actual injury so as to confer standing to bring suit]. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," [Bounds 430 U.S.] at 823 (internal quotation marks omitted) and the inmate must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to even file a complaint.

Lewis,, 518 U.S. at 351.

Moreover, Lewis requires that an inmate seeking to prove denial of access to courts prove that the claim that he was denied bringing was nonfrivolous. *See* Lewis, 518 U.S. at 353 n.3. Such a requirement is simply a functional result of requiring an "actual injury." If an inmate is denied access to courts to bring a frivolous suit, he has simply not been injured, *i.e.*, he has suffered no prejudice. *See id*. ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value -- arguable claims are settled, bought and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all....").

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy

that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." *Id*. The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. *Id*. at 414.

Here, Plaintiff claims that on May 2, 2009, the United States Court of Appeals for the Third Circuit denied his Petition for En Banc Rehearing. He claims that the theft of his legal documents denied him the means to successfully argue his Petition. Plaintiff does not identify the documents that were allegedly taken, nor does he indicate why those documents would have ensured his success on reargument. Thus, Plaintiff has failed to state a plausible claim for denial of access to the courts. This Court need not give him yet another opportunity to amend his Complaint to state such a claim. Accordingly, Defendants' Partial Motion to Dismiss should be granted as to this claim.

3. Liability Against Defendants Rozum, Gibson, Glass, and Gehlman

The final claim to review concerns whether Plaintiff successfully amended his complaint to state a claim with respect to the alleged involvement of Defendants Rozum, Gibson, Glass,

and Gehlman in the alleged assault on Plaintiff. In this regard, a corrections officer's failure to intervene in a beating can be the basis for liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and refused to do so. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). Notwithstanding, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." Id. at 651.

Here, Plaintiff merely alleges that, after a John Doe had rammed his head into the cell door, another John Doe began dragging him down the tier and down the steps past where he believes Defendants Rozum, Gibson, Glass and Gehlman were standing. These allegations simply do not suggest that any of these Defendants even saw what happened let alone had a reasonable and realistic opportunity to intervene. See Victor v. SCI Smithfield, Civil No. 3:08–1374, 2011 WL 3584781, 22 (M.D. Pa. Aug. 12 2011) (plaintiff failed to present any evidence that the defendant conspired in the attack or tried to cover it up); Young v. Beard, Civil No. 3:07-2266, 2011 WL 901865 (M.D. Pa. March 15, 2011) (holding that the record clearly indicated that the officers arrived at plaintiff's cell after the incident, and as such, could not have intervened).

Plaintiff's allegations do not state a plausible claim for failure to intervene as against Defendants Rozum, Gibson, Glass and Gehlman. This Court need not give him yet another opportunity to amend his Complaint to state such a claim. As such, Defendants' Partial Motion to Dismiss should be granted as to this claim.

### III. CONCLUSION

Based on the discussion above, it is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF No. 106) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response.  A party's failure to file timely objections will constitute a waiver of that party's appellate rights.


November 15, 2011

Carl Whitehead
1439587
Green Rock Correctional Center
PO Box 1000
Chatham, VA 24531

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge