# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL WHITEHEAD, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 09-220J |
| | ) District Judge Kim R. Gibson |
| GERALD ROZUM, *et al.*, | ) Magistrate Judge Cynthia Reed Eddy |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF. No. 139) be granted.

## II. REPORT

Plaintiff, Carl Whitehead, an inmate currently confined at the State Correctional Institution at Somerset, Pennsylvania (SCI-Somerset), commenced this action against various individuals employed by the Pennsylvania Department of Corrections (DOC). Presently pending before the Court is Defendants' Motion for Summary Judgment as to the remaining claims in this lawsuit: 1) a First Amendment retaliation claim against Defendants Barbarich and Pecze for allegedly filing a false misconduct report; and 2) an Eighth Amendment failure to intervene claim against Defendant Hayward. For the reasons that follow, it is respectfully recommended that the motion be granted.

A. Standard of Review

Federal Rule of Civil Procedure 56(a)[1] provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); UPMC Health Sys. v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, 891 F.2d 458, 460–461 (3d Cir. 1989) (the non-movant must present affirmative evidence -- more than a scintilla but less than a preponderance -- which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party cannot rest "solely on assertions made in the pleadings, legal memoranda, or oral argument," Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. *See also* Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory

---

[1] Pursuant to the 2010 amendments to the Federal Rules of Civil Procedure, the oft-cited summary judgment standard is now located in Rule 56(a) rather than 56(c), with a slight change of wording. Although the word "issue" has been replaced with "dispute," this change does not affect the substantive standard or the applicability of prior decisions construing the standard. *See* Fed. R. Civ. P. 56(a) advisory committee's note.

allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).

*Pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### B. Relevant Facts and Allegations

The two remaining claims in this lawsuit include a First Amendment retaliation claim against Defendants Barbarich and Pecze and an Eighth Amendment failure to intervene claim against Defendant Hayward.

Plaintiff's retaliation claim is based upon a misconduct he received on April 10, 2008. On that date, Officers Pecze and Barbarich noticed that there was more than the normal noise coming from the shower area. Upon investigation, they observed that three of the inmates taking showers had placed altered toothbrush holders on the shower heads that they were using to enhance the water pressure for their showers. Pecze proceeded to the showers and asked the inmates to remove the toothbrush holders from the shower heads and give them to him. Two of the inmates complied but Plaintiff refused stating that he didn't have one on his. Pecze then told Plaintiff that he, along with Sergeant Barbarich, had just observed one on Plaintiff's showerhead prior to him walking from the officer's station to the showers. At that point, Pecze claimed that Plaintiff stated to him: "Why don't you come in and get it?" Officer Pecze stated that at this time Sgt. Barbarich ordered Plaintiff to give the altered toothbrush holder to Officer Pecze at which time Plaintiff refused and stated: "What the fuck are you going to do about it?" As Plaintiff exited the shower he was told by Barbarich to turn over the toothbrush holder. Plaintiff did not comply and allegedly stated that he did not give a fuck about rules or write-ups. Barbarich ordered Plaintiff to go to his cell, get dressed, and bring his ID back to him. While Plaintiff was getting dressed, Lieutenant Demchak, Sergeant Troyan, and Sergeant Koontz arrived on the Unit. When Plaintiff returned to the officer's station with his ID, he threw it at Pecze and it landed on the officer's desk. At that time, Plaintiff was escorted to the Restricted Housing Unit (RHU). Pecze claimed that an altered toothbrush holder was found on the floor in the area where Plaintiff had showered.

Shortly thereafter, Plaintiff received Misconduct No. A854604 charging him with using abusive or inappropriate language to an employee, and refusing to obey an order. Plaintiff denied using any inappropriate language or refusing to obey an order. He claims that he told the

officers that he did not have an altered toothbrush so he could not give it to them. Plaintiff alleges that Barbarich falsified the information on the misconduct and that Pecze failed to promptly notify his supervisor that Barbarich had falsified the information on the misconduct. Plaintiff alleges that the writing of the misconduct and his placement in the RHU were in retaliation for the grievance that he filed regarding the loss of his prison job.[2]

On April 17, 2008, a misconduct hearing was held before Hearing Examiner Joseph Dupont. Although Plaintiff requested that Officer Pecze testify at his misconduct hearing, the Hearing Examiner instead received a sworn statement from Officer Pecze, who claimed that he was not present when Plaintiff allegedly used abusive language. Based on the evidence presented, including the report of Sgt. Barbarich, the Hearing Examiner found Plaintiff guilty of the charge of using offensive language; the charge of disobeying an order was dismissed. Plaintiff received a sanction of thirty days disciplinary custody.

The next significant event at issue in the pending motion took place in March of 2009. Specifically, on March 17 and 18, 2009, there was an institution-wide lockdown and search of SCI-Somerset by CERT teams consisting of officers from various institutions throughout the state. On March 18, 2009, an officer entered Plaintiff's cell and ordered him to strip. He was

---

[2] On February 12, 2008, Plaintiff was assigned to the Food Service Department at SCI-Somerset as a bake shop employee. On February 13, 2008, upon arriving at the Food Service Department, he was told that he was not allowed inside and that Defendant Fisher wished to speak with him. Fisher told Plaintiff that he received a staff report stating that Plaintiff was staring at the female staff and asking them personal questions. On February 13, 2008, Plaintiff sent Defendants Fisher and Hillagross a request slip to secure a copy of the report. Fisher refused to give Plaintiff a copy of the staff report or disclose the name of the staff member who wrote it. He told Plaintiff to write to Heidi Sroka in order to obtain a copy of the report. Plaintiff filed a grievance regarding the loss of his job sometime in February after receiving Defendant Fisher's response to his request. On March 18, 2008, Captain Griffin, Major Gelman and two other officers held a meeting with Plaintiff during which they informed him that, because of the nature of the crimes he committed (forcible rape, indecent sexual assault, and aggravated assault) he would never be allowed to work around any female staff as long as he was incarcerated in Pennsylvania.

then handcuffed behind his back and placed in a chair. At that time, the officers instructed Plaintiff to place his forehead on the door of the cell. When Plaintiff refused, an officer grabbed Plaintiff's left wrist and thumb digging his handcuffs into his wrist. Another officer allegedly grabbed Plaintiff's boxer shorts and yanked them exposing his buttocks. Thereafter, the officers began dragging him down the tier to the RHU. While he was being taken to the RHU, Plaintiff claims that the officers continued to tighten his handcuffs despite his claim that he was not resisting. Plaintiff claims that Lt. Hayward witnessed this and did not use his authority to command the CERT team officers from using excessive force.

When Plaintiff arrived at the RHU, he told Officer Nesmith that his right wrist hurt. Officer Nesmith claimed that he made no allegations of abuse at that time. Shortly thereafter, Plaintiff was seen by RN Kline. Kline stated that she checked him and asked if he was alright and that he stated he was okay. She stated that he did not complain of any injuries and voiced no concerns at that time.[3] It was not until April 5, 2009 that medical received a request slip from Plaintiff claiming that the search team hurt his wrist. Plaintiff was examined on April 6, 2009 and an x-ray taken on April 8, 2009 showed "no evidence of fracture, dislocation, or subluxation. There is no abnormal calcification, or soft tissue swelling noted. There is no evidence of arthritic change." ECF No. 161-10, p. 5. . It should also be noted that no claim of abuse was mentioned in the grievance Plaintiff filed concerning property that allegedly was taken during the March 18, 2009 cell search. ECF No. 161-17, p. 2.

Sometime after Plaintiff arrived in the RHU he received a misconduct report for refusing to obey the order to keep his head on the wall during the cell search. Plaintiff was found guilty

---

[3] Kline further stated that, had Plaintiff made allegations of abuse, she would have followed policy and taken photographs and notified her supervisor. ECF No. 161-7, p. 2.

by the Hearing Examiner and received 6 days disciplinary custody. This misconduct was upheld on appeal.

## C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). The only claims relevant to the pending motion are the First Amendment retaliation claim and the Eighth Amendment failure to intervene claim. These claims are discussed below.

1. Retaliation

The first claim to address is Plaintiff's retaliation claim. It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: 1) the conduct which led to the alleged retaliation was constitutionally protected; 2) that he was subjected to adverse actions by a state actor (here, the prison officials); and 3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

With respect to the first factor, it is well settled that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. Rauser, 241 F.3d at 333. Rather, the first requirement a Plaintiff must show is that the conduct which led to the alleged retaliation was constitutionally protected. *Id*.

The second element requires a prisoner to show that he suffered some "adverse action" at the hands of the prison officials. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah, 229 F.3d at 225. Adverse actions that are sufficient to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser, 241 F.3d at 333, and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third factor requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. This may be established by evidence of a temporal proximity between the prisoner's protected activity and the defendant's adverse action; however, the timing of the alleged retaliatory action must be suggestive of retaliatory motive. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996). It is Plaintiff's burden to prove that the Defendants were motivated by retaliation. Hannon v. Speck, Civil No. 87-3210, 1988 WL 131367, at *4 (E. D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor ... was

as he alleged.") (internal quotes and citation omitted), *aff'd*, 888 F.2d 1380 (3d Cir. 1989) (Table).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

In establishing the elements of a retaliation claim, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (internal citations omitted). Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

The first element Plaintiff must prove is that the conduct which led to the alleged retaliation was constitutionally protected. Plaintiff alleges that Pecze and Barbarich filed the false misconduct due to his actions in filing a grievance about the loss of his prison job. A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).

9

Moreover, a false misconduct is sufficient to show the second element of a retaliation claim. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Thus, Plaintiff has alleged the first two prongs of a retaliation claim.

Plaintiff fails, however, to show the third factor, causation. Specifically, Plaintiff claims that he filed a grievance in February of 2008 concerning the loss of his job. This grievance was not filed against either Pecze or Barbarich. Moreover, there is no evidence indicating whether Pecze or Barbarich were even aware of his filing of this grievances such as to establish any motivating factor. In this regard, Plaintiff has failed to provide the court with any probative evidence establishing the crucial link between his previous litigation and Defendants alleged retaliatory actions. *See* Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link"); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

Here, Plaintiff has failed to provide a precise chronology of events; consequently, no reasonable jury could infer causation. While "timing plus other evidence may be an appropriate test where the temporal proximity is not so close as to be 'unduly suggestive,' " Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000), Plaintiff has not offered other evidence in support of his retaliation claim. Thus, he has not demonstrated any causation between his protected activities and Defendants' alleged action in filing the misconduct report.

Moreover, the filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited "retaliation" unless the report is, in fact, false. In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance. *See* Harris-Debardelaben v. Johnson, 121 F.3d 708, 1997 WL 434357, at *1 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.), *cert. denied*, 119 S.Ct. 246 (1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), *cert. denied*, 115 S.Ct. 2584 (1995). *See also* Alexander v. Fritch. 396 F. App'x 867, 874 (3d Cir. 2010) (holding that "because there was evidence to support the hearing examiner's finding of guilt, there was a legitimate penological reason for the charge and punishment"); Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); Allah v. Al-Hafeez, 208 F. Supp. 2d 520 (E.D. Pa. 2002).

Here, based on evidence presented, including the report filed by Barbarich and the testimony received by Pecze, the Hearing Examiner found plaintiff guilty of the charge of using offensive language; the charge of disobeying an order was dismissed. This constitutes "some evidence" sufficient to support a prison disciplinary conviction. *See* Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). [4] *Accord* Speight v. Minor, 245 F. App'x 213, 217 (3d Cir. 2007) ("As

---

[4] The "some evidence" standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. *Accord* Simpson v. Bledsoe, 378 F. App'x 198, 200 (3d Cir. 2010).

the District Court correctly noted, the disciplinary hearing record, specifically the charging officer's report, although meager, constitutes some evidence supporting the DHO's decision in Speight's case.").

Because Plaintiff was found guilty of the misconduct based upon some evidence that he did engage in the acts he was accused of, even if Plaintiff had presented sufficient evidence to support his *prima facie* case of retaliation, he is essentially barred from succeeding on his retaliation claim because such a finding of guilt as to the misconduct charge conclusively establishes that Defendants would have taken the same actions regardless of any protected activity engaged in by Plaintiff. Nifas v. Beard, 374 F. App'x. 241, 244 (3d Cir. 2010) (holding that Nifas's retaliatory discipline claim fails because there is "some evidence" supporting the guilty findings for the three disciplinary charges brought against Nifas after he filed his grievance); Wright v. Kellough, 202 F.3d 271 (Table), 1999 WL 1045787 (6th Cir.1999) (inmate could not state claim of retaliation where he was found guilty of misconduct charge giving rise to retaliation claim); Vercheres v. Wilkinson, 194 F.3d 1315 (6th Cir.1999) (Table, Text in Westlaw) ("Thus, Vercheres's retaliation claim was properly dismissed, as the finding that he was guilty of stalking satisfied the defendants' burden of showing that the guard would have charged him with a violation, even if Vercheres had not filed a grievance."). Consequently, Defendants are entitled to summary judgment as to this claim.

2. <u>Failure to Intervene</u>

Plaintiff's final claim against Defendant Hayward asserts liability under the Eighth and Fourteenth Amendments. The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane

conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In addition, the Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, as well as at the hands of guards or other state actors. Farmer, 511 U.S. at 833.

Every Eighth Amendment claim embodies both an objective and a subjective component. In the context of a "failure to protect" claim, a plaintiff must demonstrate that: 1) he is incarcerated under conditions posing a substantial risk of serious harm; and 2) prison officials showed "deliberate indifference" to such risk. *Id.*, 511 U.S. at 834. The first criterion requires a plaintiff to demonstrate that he suffered a deprivation that is "objectively sufficiently serious." *Id*. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, "deliberate indifference," requires that a plaintiff show that the defendant prison official had a sufficiently culpable state of mind. Farmer, 511 U.S. 828. The Supreme Court explained the deliberate indifference standard in Farmer as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or

13

> omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added). Thus, in Farmer, the Supreme Court rejected an objective test for deliberate indifference. Instead, the Court adopted a subjective test that requires an inquiry into what the prison official actually knew rather than what a reasonable official in his position should have known. To defeat summary judgment, a plaintiff must present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm. Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001) (quoting Farmer, 511 U.S. at 846)).

The record evidence shows that Plaintiff is not entitled to recover on his claim of failure to intervene. In this regard, a corrections officer's failure to intervene in a beating can be the basis for liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and refused to do so. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). In his deposition, Plaintiff claims that the guards used excessive force by twisting his thumb and wrists when they were escorting him to the RHU. He further stated that he did not know exactly when Hayward arrived to lead the escort team to the RHU. Thus, there is no evidence that suggests that Hayward even saw what happened let alone had a reasonable and realistic opportunity to intervene. *See* Victor v. SCI Smithfield, Civil No. 3:08–1374, 2011 WL 3584781, 22 (M.D. Pa. Aug. 12 2011) (plaintiff failed to present any evidence that the defendant conspired in the attack or tried to cover it up); Young v. Beard, Civil No. 3:07-2266, 2011 WL 901865 (M.D. Pa. March 15, 2011) (holding that the record clearly indicated that the officers arrived at plaintiff's cell after the incident, and as such, could not have intervened).

14

While an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury, a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him. Sow v. Fortville Police Dept., 636 F.3d 293, 304 (7th Cir. 2011); Stainback v. Dixon, 569 F.3d 767, 773 (7th Cir. 2009); Rascon v. Hardiman, 803 F.2d 269, 276 (7th Cir. 1986) (mere negligence in failing to perceive that other officers were inflicting illegal summary punishment rather than using lawful force to subdue a violent inmate does not support liability under § 1983); Taylor v. Kveton, 684 F. Supp. 179, 183 n. 6 (N.D. Ill. 1988) (noting, in granting an officer summary judgment on his failure to intervene to loosen the plaintiff's too-tight handcuffs, that there was no evidence that the officer was aware the handcuffs were too tight).

In this case, the facts are similar to the facts in Davidson v. Murray, 371 F.Supp.2d 361, 376 (W.D.N.Y. 2005). In that case, the prisoner alleged that a guard who was escorting him from his cell to another part of the prison handcuffed him tightly and twisted and yanked his wrists and arms and then placed his body weight onto the prisoner's back when he pressed the prisoner's face into a corner of an elevator. There was no evidence before the court that the prisoner ever sought medical treatment after the incident. The court granted the defendant's motion for summary judgment, finding that the prisoner had not raised a triable issue of fact as to either the objective or the subjective prong of his excessive force claim. Specifically, the court concluded that the incident was not sufficiently serious or harmful enough to constitute excessive force in violation of the Eighth Amendment and that, although the prisoner allegedly suffered "intense pain," there was no medical evidence to support his claims, and no evidence to show that the officer used force maliciously and sadistically to cause harm.

Similarly, in the instant action, no reasonable jury could find Hayward's actions objectively unreasonable when Plaintiff failed to mention any injury or instances of abuse when he was seen by the medical department shortly after the incident. Nor did he seek medical attention or make any allegations of abuse shortly after he was placed in the RHU. Instead, he waited over two weeks until he first complained to anyone about his alleged injuries and the alleged abuse. No reasonable jury could find Hayward liable based on these facts. Thus, Defendants are entitled to summary judgment as to this claim. *Accord* Tibbs v. City of Chicago, 469 F.3d 661, 666 (7th Cir. 2006) (holding that where the plaintiff neither sought nor received medical care for any alleged wrist injury, no reasonable jury could find that the arresting officer's actions were objectively unreasonable); Sow, 636 F.3d at 304 (holding that officer did not use excessive force when he allegedly placed handcuffs too tightly on arrestee when arrestee provided no elaboration to officer after complaining once that handcuffs were too tight, arrestee did not complain of any injury when he was taken to jail, and arrestee did not receive any treatment resulting from use of handcuffs); Stainback, 569 F.3d at 773 (officers' actions were reasonable under the circumstances even though the plaintiff claimed the officers' actions in handcuffing him and keeping him in handcuffs resulted in two torn rotator cuffs, due to a preexisting shoulder condition); Anderson v. Sullivan, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (no excessive force where nurse's physical examination after the incident revealed no injuries; inmate sought no treatment and x-ray revealed no fracture, destructive lesion, or dysplasia).

## III. CONCLUSION

Based on the discussion above, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 139) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

August 14, 2012

  /s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Carl Whitehead
EK 5805
SCI Somerset
1600 Walters Mill Road
Somerset, PA 15510